THE STATE OF KANSAS *ex rel. A. A. Godard, as Attorney-general, etc., Appellee,* v. THE STATE BANK OF CIRCLEVILLE (F. C. NUZMAN *et al., Appellants*).

No. 16,946.

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Insolvency—Receiver—Jurisdiction.* When a district court in a suit brought by the state for that purpose appoints a receiver to wind up the affairs of a banking corporation it thereby secures to itself full jurisdiction to adjust all rights, interests, claims and demands, legal or equitable, relating to the bank's estate or growing out of its administration, and to control, at its discretion, all controversies affecting the subject matter of the receivership.

The State v. Bank.

2. ———— *Litigation of Claims against Assets—Independent Action.* In the exercise of the jurisdiction stated the court may refuse to allow a claim upon the assets in its custody to be litigated in an independent action, and may itself adjust the matter in a proceeding in the receivership suit.

3. ———— *Right to Jury Trial.* In such a case the court may, if it see fit, award a trial by jury as to matters of fact or damages; but it is not obliged to do so.

4. ———— *Limitation of Actions—Laches.* When a court undertakes to wind up the affairs of a bank through a receiver the right to secure the satisfaction of demands by the usual processes of the law is suspended. The statute of limitations against ordinary actions does not apply, and lapse of time before proceeding against funds in the receiver's hands is important only as it indicates laches or unreasonable delay.

Appeal from Jackson district court. Opinion filed March 11, 1911. Affirmed.

*H. F. Graham, E. D. Woodburn, F. T. Woodburn,* and *A. E. Crane,* for the appellants.

*Charles Hayden,* and *John D. Myers,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: In an action brought by the state for that purpose John D. Myers was appointed receiver to close up the affairs of the State Bank of Circleville. The National Bank of Commerce of Kansas City, Missouri, held certain assets of the defunct bank as collateral security. These assets, consisting of promissory notes, were turned over to Myers personally by the National Bank of Commerce, to be collected by him as its agent. Out of collections which he made he paid a note of $1600, for which the collateral paper had been held. Thereafter Myers considered that the remainder of the notes belonged to him as receiver. In that capacity he collected those which were collectable, disposed of the remainder, paid out the proceeds upon the debts of the bank, and returned an account accord-

ingly, which was approved.   The National Bank of Commerce, however, claimed a further lien upon the residue of the notes, for certain advancements it had made to the Circleville bank, and demanded a return of them from its agent.   The demand was refused, Myers was sued personally by the National Bank of Commerce, in Missouri, and judgment was rendered against him for conversion.   At the time the suit was instituted in Missouri all the creditors of the Circleville bank had been paid, and its stockholders were the parties interested in the result.   Myers consulted them freely, employed counsel to assist him, and defended the suit on the ground, among others, that the notes in question were the property of the receiver of the Circleville bank.   The judgment against him was rendered in October, 1908, and was for a sum considerably less than that which the National Bank of Commerce claimed.   In January, 1909, the receiver reported his conduct to the court and asked an allowance for the judgment in favor of the National Bank of Commerce, and interest, and for costs, expenses and attorney fees incurred in defending the action.   The stockholders objected to the report and demanded that Myers in his personal capacity bring an independent action against the receiver to establish the claim.   This being refused, the stockholders denied in various ways the propriety of the different items of the receiver's report, invoked the three-year statute of limitations against them, and demanded a jury trial.   A jury was refused, the court heard the evidence, approved the report, made the allowances asked for, and entered an order that they be paid out of the assets in the receiver's hands.   The stockholders appeal.

By the order appointing the receiver the court took complete control over the whole subject of winding up the bank's affairs.   The receiver became the arm of the court for the accomplishment of its purpose.   He was independent of parties, creditors and all others con-

cerned, but was a conservator of the true interests of each one, and the funds and property in his care were *in custodia legis*. His appointment determined no conflicting rights, fixed no liabilities and had no tendency to enlarge or diminish the claims, whether legal or equitable, of anybody. (*Howell v. Hough,* 46 Kan. 152; *Railway Co. v. Love,* 61 Kan. 433; *Cramer v. Iler,* 63 Kan. 579.) He took the assets of the bank subject to all liens and equities existing against them at the time he was appointed. (*Reeves v. Pierce,* 64 Kan. 502.) But by virtue of the appointment the court secured to itself jurisdiction to adjust all rights, interests, claims or demands, legal or equitable, relating to the estate or growing out of its administration, and to control at its discretion all controversies affecting the subject matter of the receivership. (*Savings Bank v. Simpson,* 22 Kan. 414; *St. Jos. & D. C. Rld. Co. v. Smith, Treasurer,* 19 Kan. 225.)

These elementary principles governing the procedure in receivership cases meet all the assignments of error. The collateral notes, whether in the possession of the National Bank of Commerce, of Myers personally, or of Myers as receiver, were burdened with a lien to the extent of all sums for which the National Bank of Commerce had the right to hold them. The court at all times possessed plenary power to determine the true interest of the receiver in the paper and the funds which it produced, and to adjust the rights of the parties accordingly. That was one of the things which the receivership was instituted to accomplish. The court and the cause were open for that very purpose. If for any reason an independent action will afford a better means of settling claims against the assets under the control of the court it has a discretion to remit the interested parties to that form of remedy, but it is not obliged to do so.

"There is nothing in the procedure, with reference

24—84 KAN.

to special proceedings involving the liquidation of insolvent banking corporations, which limits or constrains the exercise of the ample legal and equitable powers of the superior court, so that one making such a claim, as the petitioner does here, against the receiver, as to the assets of the corporation, can not have his claim as fully and fairly determined by intervention therein as by bringing an independent action. For the purposes of present consideration it must be assumed that the money to which the petitioner asserts his right came into the possession of the receiver and is held by him under claim that it is a part of the assets of the insolvent corporation. While the court in the special proceeding for liquidation takes charge of the assets of an insolvent bank and holds them through its officer, the receiver, it only does so to conserve the interests of those who are properly entitled to share in them. It assumes the administration of the entire estate; controls the conduct of the receiver, who is its officer, and whose possession of the assets is the possession of the court; it holds the property and administers the insolvent estate through the receiver in the interest and for the benefit of those who it may ultimately determine are entitled to it. The receiver is under the control of the court, as is the property of which he is the custodian, and while the court will not permit any interference with such property without its leave, neither will it withhold such property from one who shows he is entitled to it. But whether the court will permit, upon application, an independent suit to be brought relative to the property in the hands of the receiver, or will compel intervention in the proceedings in which the receiver is appointed, is a matter for its discretion." (*De Forrest v. Coffey,* 154 Cal. 444, 449, and authorities cited on the succeeding pages.)

If the National Bank of Commerce had chosen to proceed against the receiver, the court would have had the right to compel it to intervene. Much less reason existed for compelling the parties now contending to go through all the forms of an independent action to settle their differences.

When the court assumed full charge of all the affairs of the Circleville bank and undertook to wind them up

for the benefit of creditors, stockholders and all others concerned, the right to secure the payment of claims by the usual processes of the law was suspended. The receivership suit itself was one pending for the benefit of everybody interested. The statute of limitations against ordinary actions has no application, and lapse of time before proceeding against funds in the receiver's hands is important only as it tends to show laches or unreasonable delay. (*Kirkpatrick v. McElroy*, 41 N. J. Eq. 539, 555, and authorities there cited.)

The same fundamental considerations dispose of the demand for a jury trial. In order to accomplish full justice to all persons concerned the court may take cognizance of all classes of claims to the funds of the estate in its custody, determine their validity and extent, and make orders respecting the time and manner of their payment. (*Shedd v. Seefeld*, 230 Ill. 118, 127.) The power to do this is one of the incidents attaching to the equitable administration of the estate of an insolvent concern in a court of chancery. As already shown, it extends to forbidding altogether actions against the receiver. In the exercise of such power the court may, if it see fit, award a trial by jury of all matters of fact or damages, or it may refer those matters to a master or commissioner, or it may determine them for itself. But an application for a trial by jury is addressed entirely to the discretion of the court. (High, Receiv., 4th ed., § 254*b*.)

In this case Myers had no cause of action for the recovery of money in the sense of the statute providing for a jury trial, and it would have been impossible to cast the application for allowances into any form which would make that statute pertinent. The subject was one peculiarly of equitable cognizance, and the court was entirely within its right when it determined the controversy itself.

The judgment rendered by the Missouri court in

favor of the National Bank of Commerce was not *res judicata*, because the receiver was not a party to the suit in his official capacity, but the record in that suit supplied important evidence bearing upon the question whether the allowances asked for should be made.

The Missouri suit was in fact defended for the benefit of the estate in process of administration through the receivership, and the estate was in fact benefited by the defense made. The receiver's conduct was irregular in that he did not first obtain authority from the court itself to defend. Even though he consulted the stockholders he took the chance of securing reimbursement for costs, expenses and attorney fees when he acted without a previous order. The court, however, still had the power to pass upon the propriety of his conduct and to make such allowances as justice required.

The judgment of the district court is affirmed.